UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARY TOMPKINS, on behalf
of herself and all others
similarly situated,

        Plaintiffs,

   v.

BASIC RESEARCH LL, DYNAKOR
PHARMACAL, LLC, WESTERN
HOLDINGS, LLC, DENNIS GAY,
DANIEL B. MOWREY, Ph.D,
MITCHELL K. FREIDLANDER,
and DOES 1 through 50,

        Defendants.
                                /

NO. CIV. S-08-244 LKK/DAD

O R D E R

This is a putative class action arising from the sale and advertising of an allegedly ineffective dietary supplement, Akävar 20/50 ("Akävar"). Plaintiff Mary Tompkins originally brought suit against defendants Basic Research, LLC, Dynakor Pharmacal, LLC ("Dynakor"), Western Holdings, LLC, Dennis Gay, Daniel Mowrey, and Mitchell Friedlander in state court. Defendants subsequently removed this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Pending before the court are plaintiff's

motion to remand and defendants' motion to transfer or dismiss. Plaintiff's motion to remand argues that CAFA's amount in controversy requirement has not been met. Defendants' motion to transfer argues that the case should be transferred to the District of Utah under the first-to-file rule. A subset of the defendants have also filed a motion to dismiss for lack of personal jurisdiction. The court resolves the matter on the parties' papers and after oral argument. For the reasons set forth below, the court denies the motion to remand and grants the motion to transfer.[1]

## I. Background

In this putative class action, plaintiff, a citizen of California, seeks to recover costs associated with the purchase of the allegedly ineffective dietary supplement, Akävar, on behalf of herself and other similarly situated California consumers. Akävar is a dietary supplement, advertised by defendants as a "foolproof" alternative to weight loss with "guaranteed success" and "without grueling diet and exercise regimens!" Compl. ¶ 3. Plaintiff alleges that she purchased a supply of Akävar and used the product for two weeks as directed on the package labeling, but did not experience any weight loss. Id. ¶ 8.

Defendants sell Akävar directly to consumers for $39.99 per

---

[1] Accordingly, the court does not address the motion to dismiss for lack of personal jurisdiction brought by defendants Gay, Mowrey, Friedlander, and Western Holdings.

bottle, but the product is also available in stores and online through third-party retailers such as General Nutrition Center, Wal-Mart, Rite-Aid, and Walgreens. Id. ¶ 40. Plaintiff alleges that each individual class member's claim is "less than $75,000" given the relatively modest damages that could be recovered for each person. Id. ¶ 7.

Consequently, on December 6, 2007, plaintiff filed suit in California state court alleging claims based upon the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* On February 1, 2008, defendants removed this action pursuant to CAFA, which confers federal jurisdiction where (1) there are 100 or more members in plaintiff's proposed class, (2) at least one member of the proposed class has a different citizenship than at least one defendant (i.e., minimal diversity), and (3) the matter in controversy exceeds the aggregate sum of $5,000,000. 28 U.S.C. § 1332(d)(2), (5), & (6). The complaint here alleges a class of "thousands of persons," Compl. ¶ 43, and there is at least minimal diversity.[2] The only dispute between the parties is whether the $5 million amount in controversy requirement is satisfied. Previously, on March 5, 2008, the court permitted

---

[2] In fact, there is complete diversity between the parties. Defendants Basic, Dynakor, Gay, and Mowrey are citizens of Utah. Defendant Western is a citizen of Wyoming, and defendant Friedlander is a citizen of Nevada.

3

1 limited jurisdictional discovery on this issue.

2     Prior to plaintiff's commencement of suit in state court, a class action was filed in federal court in the District of Utah on November 9, 2007. Miller v. Basic Research, LLC, No. 07-CV-00871-TS (D. Utah, filed Nov. 9, 2007). The plaintiffs in the Utah action consist of three individuals suing for themselves and on behalf of a putative nationwide class of purchasers of Akävar. Accordingly, all the plaintiffs in this action are also encompassed within the Utah action's proposed class.  In addition, the exact same defendants named in this action are named in the Utah action.  Moreover, it appears that plaintiff has incorporated, verbatim, paragraphs from the Utah complaint.

    The Utah complaint alleges violations of various state consumer protection laws, including, specifically, California's Unfair Competition Law, as well as various other claims, including one under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.  Like the plaintiff in the present action, the Utah plaintiffs maintain that defendants marketed Akävar with false advertisements about its weight-loss properties and that in reliance on these advertisements, consumers purchased Akävar but did not lose weight, causing financial harm.  The Utah plaintiffs seek injunctive relief, disgorgement or restitution, general, treble, and punitive damages, and attorneys' fees and costs.  See Def.'s Request for Judicial Notice, Ex. B.

////

4

**II. Motion to Remand**

**A. Standards**

In removal cases, the removing defendant always has the burden of establishing federal jurisdiction, including the burden of proving any applicable amount in controversy requirement. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The appropriate procedure for determining the amount in controversy on removal is twofold.

First, the district court must determine if the amount in controversy is facially apparent from the complaint. Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). If plaintiff alleges damages in excess of the jurisdictional amount, then the jurisdictional amount is presumptively satisfied unless it appears to a legal certainty than the claim is actually worth less than the jurisdictional amount. Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 683 n.8 (9th Cir. 2006). Conversely, if plaintiff alleges damages less than the jurisdictional amount -- regardless of whether plaintiff alleges a specific amount (e.g., "$74,000") or simply alleges that the amount is "less than" the jurisdictional amount (e.g., "less than $75,000") -- then the jurisdictional amount is presumptively not satisfied unless it appears to a legal certainty that the claim is actually worth more than the jurisdictional amount. Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 999 (9th Cir. 2007).

Second, if the complaint fails to plead a specific amount

of damages, or the amount of damages is vague or ambiguous, then the removing defendant must prove by a preponderance of evidence that the amount in controversy requirement has been met. Gaus, 980 F.2d at 566-67; Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) ("Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" is satisfied).  This preponderance standard is reserved only for these situations; even an allegation seeking "less than" the pertinent jurisdictional amount is subject to the more demanding legal certainty standard discussed above. Lowdermilk, 479 F.3d at 998. If the defendant is unable to prove by a preponderance of evidence that the amount in controversy has been met, the case must be remanded to state court. 28 U.S.C. § 1447(c).

A court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." Lowdermilk, 479 F.3d at 1002. Accordingly, the defendant must set forth facts supporting the assertion that the amount in controversy exceeds the statutory minimum. See Gaus, 980 F.2d at 567. Such facts must be in the form of "summary judgment-type evidence relevant to the amount in controversy at the time of removal." Id. (citing Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004)). In certain situations, it may be appropriate for the court to grant limited discovery relevant to the jurisdictional amount before deciding the motion to remand. Gibson v. Chrysler Corp., 261 F.3d 927, 948 (9th Cir. 2001).

**B. Analysis**

Defendants bear the burden of demonstrating that the three CAFA requirements of class size, minimal diversity, and amount in controversy have been met. As noted above, the first two requirements are satisfied because they are facially apparent from the complaint: plaintiff alleges a class of "thousands of persons," Compl. ¶ 43, implying a logical minimum of 2,000 class members, and the California plaintiff class is minimally (and, in fact, completely) diverse from the defendants, who are citizens of Utah, Wyoming, and Nevada. Thus, the dispositive inquiry is whether defendants have satisfied their burden of proving that $5 million dollars are in controversy. Sanchez, 102 F.3d at 404.

As an initial matter, the court finds that the appropriate standard of proof to be applied in this case is a preponderance of the evidence. Under Lowdermilk, an allegation that a claim is worth "less than" the jurisdictional amount will ordinarily constitute an allegation of a specific amount in damages and therefore trigger the more demanding legal certainty standard of proof. 479 F.3d at 999. Here, however, plaintiff's allegation that no *individual* claim exceeded $75,000 was directed at avoiding conventional diversity jurisdiction under 28 U.S.C. § 1332(a). That has no relevance to the actual basis of removal here under 28 U.S.C. § 1332(d) (CAFA), which, instead of focusing on *individual* claims, requires that the *aggregate* sum

7

1  of the class members' claims exceed $5 million dollars.[3]  In
2  addition, the prayer for relief does not make any reference
3  whatsoever to a particular sum of money.  See Guglielmino v.
4  McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007) (focusing
5  specifically on contents of prayer for relief in ascertaining
6  whether complaint alleges any amount in damages).  Accordingly,
7  with respect to CAFA's jurisdictional amount in controversy
8  requirement, the court finds that the complaint is silent and
9  therefore applies the preponderance of the evidence standard.

10      For a substantially similar reason, the court rejects
11 defendants' initial argument that the complaint has alleged a
12 claim of $74,999 for each class member, based on the allegation
13 that each class member's claim is "less than $75,000."  In
14 defendants' view, the amount in controversy is $74,999
15 multiplied by a minimum of 2,000 class members for a total of
16 $149,998,000.  Of course, alleging that a claim is worth "less
17 than $75,000" is fundamentally different from alleging that a
18 claim is worth $74,999.  There are also 74,998 other figures
19 that would satisfy plaintiff's allegation, and there is no
20 logical reason why the figure arbitrarily chosen by defendants,
21 at the high end of that range, should control the jurisdictional

---

[3] The complaint's allegation that each individual claim is less than $75,000 is consistent with *both* a finding that CAFA's jurisdictional requirement has been met, and a finding that it has not.  To illustrate, assuming a class of 2,000, if each individual had a claim worth $2,400 (for a total of $4.8 million), the $5 million dollar requirement would not be satisfied, whereas if each individual had a claim worth $2,600 (for a total of $5.2 million), the $5 million dollar requirement would be satisfied.  In both cases, however, each individual claim is less than $75,000.

8

inquiry.[4]  Defendants' analogy to cases in which courts have assumed a maximum statutory penalty for purposes of calculating an amount in controversy is inapt, because such an assumption is appropriately limited to situations where plaintiff has expressly sought the maximum statutory amount.  See Romeo v. Home Depot, No. 06-CV-1505, 2006 U.S. Dist. LEXIS 79881 (S.D. Cal. Oct. 30, 2006) (recognizing jurisdiction where plaintiff sought "statutory maximum").

Defendants more substantive argument, relying on summary judgment-type evidence, fares better.  Defendants have submitted the declaration of Brad Stewart, the chief financial officer of Basic Research and Dynakor.  First, with regard to a potential restitution award, Mr. Stewart stated that as of January 25, 2008 (one week before the February 1, 2008 date of removal[5]),

---

[4] Although one court has taken the approach urged by defendants of assuming the "express maximum figure per class member" (based on an allegation that each individual's claim was less than $74,999.99), Levine v. Bic USA, Inc., No. 07-CV-1096, 2007 WL 2406897, at *4 (S.D. Cal. Aug. 20, 2007), this court cannot discern a principled basis for such an assumption.  Indeed, such an assumption is contrary to Lowdermilk, where the Ninth Circuit cautioned that its holding was animated by two concerns: that (1) "as federal courts, we are courts of limited jurisdiction and we will strictly construe our jurisdiction" and (2) "it is well established that the plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction."  479 F.3d 998-99; accord Guglielmino, 506 F.3d at 700.

[5] Plaintiff argues that the amount in controversy should be determined as of the date of the complaint was filed.  There is a split in authority as to whether the pertinent date is the commencement date or the removal date, compare Piazza v. EMPI, Inc., No. 07-CV-00953, 2008 WL 590494, at *14 (E.D. Cal. Feb. 29, 2008) (removal date) with Scherer v. Equitable Life Assur. Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003 (commencement date), but given that the difference between those dates here is less than 60 days, it is immaterial to the court's ultimate outcome.

9

1  sales of Akävar in California "totaled just over $2,000,000."[6]
2  Stewart Decl. ¶¶ 4-6.  Because plaintiff seeks "injunctive
3  relief in the form of recall or buy-back" of Akävar, Compl. ¶
4  54, and restitution, Compl. Prayer, this $2 million dollar
5  figure constitutes evidence of plaintiff's likely restitution
6  (under the UCL claim[7]) or compensatory damages (under the CLRA
7  claim[8]).  Second, plaintiff seeks to establish a "common fund"
8  of disgorged money, Compl. Prayer ¶ 5, and the Ninth Circuit has
9  established that 25% of the common fund is a fair estimate of
10 attorneys' fees.  See Staton v. Bowing Co., 327 F.3d 938, 969
11 (9th Cir. 2003); Brady v. Mercedes-Benz, 243 F. Supp. 2d 1004,
12 1010-11 (N.D. Cal. 2002) (amount in controversy includes a
13 reasonable estimate of attorneys' fees likely to be incurred).
14 This therefore adds $500,000 to the amount in controversy.
15 Third, applying the "conservative" estimate of a 1:1 ratio
16 between compensatory and punitive damages, Guglielmino, 506 F.3d

---

[6] Plaintiff argues that this figure might be inflated because it fails to take into account consumers who have sought refunds of the product.  But this is mere speculation, and it is unlikely that refunds would appreciably change the figure.

[7] The UCL permits awards of "money . . . that defendants took directly from [the class members]," Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1146-47 (2003), or indirectly (e.g., through an intermediary retailer), Shersher v. Superior Court, 154 Cal. App. 4th 1491, 1499 (2007).

[8] The measure of CLRA damages is: "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction."  Cal. Civ. Code § 3343.  Because plaintiff did not lose any weight, she presumably values Akavar at $0, which means that she is entitled to recover the entire cost of the product.

10

at 698, adds an additional $2 million dollars, given that the CLRA permits punitive damages. Accordingly, the sum total thus far is $4.5 million.

The amount in controversy to be considered also includes either the defendant's cost of compliance with an injunction or the plaintiff's benefit from the injunction. In re Ford Motor Co., 264 F.3d 952 (9th Cir. 2001). Under the "either viewpoint" rule, whichever party stands to gain or lose a greater amount is the one whose viewpoint is taken into account for jurisdictional purposes.[9] Id. at 958 (9th Cir. 2001).

Here, the injunctive relief requested includes a buy-back of Akävar currently on shelves and corrective advertising. According to Mr. Stewart, there is presently $10 million dollars worth of Akavar on store shelves nationwide, Stewart Decl. ¶¶ 10-12, and corrective advertising would also cost $10 million dollars nationwide, id. ¶¶ 18-19. In addition, at least $450,000 has been spent on television advertising in California. Id. Of course, not all of this evidence is on-point, because some of it pertains to nationwide figures rather than California-specific figures, but the evidence is nevertheless

---

[9] Prior to CAFA, the Ninth Circuit rejected use of the "either viewpoint" rule in the context of class actions based on the concern that assessing the amount in controversy from defendant's perspective was tantamount to aggregating damages. See Snow v. Ford Motor Co., 561 F.2d 787 (9th Cir. 1977). Now, however, "[i]t is clear that CAFA overrules the circuit's position on this point insofar as qualifying class actions are concerned," because CAFA explicitly allows aggregation of damages in determining the amount in controversy. Yeroushalami v. Blockbuster, Inc., No. 05-CV-225, 2005 WL 2083008, *3 n.4 (C.D. Cal. Jul. 11, 2005).

probative of how much an injunction would cost in California. Although defendants argue that a victory for plaintiff in this case would cause retailers nationwide to withdraw the product, and that an injunction recalling the product would render the product unmarketable, this would be an incidental rather than direct effect of an injunction, and a highly speculative one at that.

Accordingly, the narrow question before the court is whether the evidence submitted makes it is more likely than not that compliance with injunctive relief in California would be in excess of $500,000, given the undisputed evidence that nationwide compliance would cost $20 million. Particularly in light of the fact that defendants have spent nearly $500,000 alone in California television advertisements -- without even considering the cost of buying back products on California shelves -- the court concludes that it is more likely than not that the $5 million dollar amount in controversy requirement has been met. The court therefore denies plaintiff's motion to remand.

### III. Motion to Transfer or Dismiss[10]

**A. Standard**

The first-to-file rule is a "generally recognized doctrine

---

[10] Defendants have moved to transfer on the basis of both the first-to-file rule and 28 U.S.C. § 1404(a) (convenience of the parties and witnesses and interests of justice). Because the court transfers the action on the basis of the first-to-file rule, it does not address whether the action might also warrant transfer on the basis of § 1404(a).

12

of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). The purposes of this rule are to promote efficiency, to avoid duplicative litigation, Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991), and "to avoid the embarrassment of conflicting judgments," Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979). Thus, a district court may transfer, stay, or dismiss the second action if it finds that doing so would be in the interests of sound judicial administration. Alltrade, 946 F.2d at 623.

Courts look to three requirements in applying this rule: (1) the chronology of the actions, (2) the similarity of the parties, and (3) the similarity of the issues. Alltrade, 946 F.2d at 625. The similarity requirements do not require that the issues or parties be identical, but only that they be "substantially similar." Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006). Even when the three requirements are satisfied, the district court has discretion to deny the motion when the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping. Alltrade, 946 F.2d at 628.

**B. Analysis**

All three requirements of the first-to-file rule are

13

satisfied here.  First, the Utah complaint was filed first in time on November 9, 2007.  Plaintiff's complaint here was not filed in Sacramento Superior Court until December 6, 2007.  Plaintiff nevertheless maintains that her complaint was actually commenced earlier, when she sent a statutory notice letter to defendants on October 29, 2007 pursuant to a CLRA requirement.  See Cal. Civ. Code § 1782.[11]  The argument is unavailing.  Federal Rule of Civil Procedure 3 provides that the filing of a complaint is what commences a lawsuit.  Fed. R. Civ. P. § 3.  The same is true under California law.  Cal. Code Civ. Proc § 411.10.  Furthermore, in numerous other contexts where there are prerequisites to suit, such as exhaustion of administrative remedies, an action is not deemed commenced until it is filed -- not when action preparatory to filing is undertaken.  Accordingly, the court finds that the Utah action was filed first.

Second, the parties in this action and the parties in the Utah action are substantially similar.  All six of the defendants named in this action are identical to those named in the Utah action.  In addition, the Utah putative class is a nationwide class that explicitly subsumes all California

---

[11] California Civil Code § 1782 provides that not less than thirty days prior to filing any CLRA action, plaintiff shall notify the prospective defendants in advance and demand that the purportedly unlawful practice cease. As defendants note, however, that section also provides that suit may be commenced prior to filing such a letter to the extent plaintiff seeks injunctive relief; after a letter is sent, the plaintiff may then amend her complaint to request damages.  Cal. Civ. Code § 1782(d).

14

1  consumers of Akävar.  Utah Compl. ¶ 104.  While the Utah action
2  includes plaintiffs in addition to California consumers, this
3  does not negate a finding of substantial similarity.  So long as
4  California consumers are represented in both actions, the risk
5  of inconsistent judgments remains.  Accordingly, the court finds
6  that the parties in the two actions are substantially similar.
7       Third, the issues in the two actions are also substantially
8  similar.  Both complaints allege virtually identical facts --
9  that the defendants engaged in unfair practices and marketed
10 Akävar through false or misleading advertisements -- and assert
11 the same claim under the California Unfair Competition Law
12 (which, as a matter of law, also encompasses the False
13 Advertising Law claim asserted in this action).  See O'Brien v.
14 Camisasca Auto. Mfg., Inc., 73 Cal. Rptr. 3d 911, 918 (2008)
15 ("Any violation of the FAL necessarily violates the UCL.").
16 Indeed, the complaint here has copied many allegations directly
17 from the Utah complaint.  The Utah action also includes claims
18 in addition to those asserted here, e.g., RICO, but the relevant
19 issue is whether the claims asserted here are also asserted in
20 the Utah action, rather than the reverse.
21      The only such claim "missing" from the Utah action is a
22 claim under the CLRA, which is alleged here. Substantively, the
23 CLRA claim is similar to the UCL and FAL claims; the CLRA claim,
24 for example, addresses whether defendants made false or
25 misleading representations and failed to disclose material
26 information regarding the true characteristics of Akävar.

1  Compl. ¶ 58.  The most significant difference for purposes here
2  is that whereas punitive damages and attorneys' fees are
3  recoverable under the CLRA, they are not recoverable under the
4  UCL.  This factor weighs in favor of transferring this action
5  rather than dismissing it altogether (both of which are
6  permissible under the first-to-file rule).  Because the issues
7  of liability significantly overlap between the UCL and CLRA
8  claims, they would most efficiently be resolved by the same
9  court.  Finally, such an approach would also lower the risk of
10 inconsistent judgments.
11      Accordingly, defendants' motion to transfer or dismiss on
12 the basis of the first-to-file rule is granted.

### IV. Conclusion

14      Accordingly, the court orders as follows:
15      1.  The motion to remand is DENIED.
16      2.  The motion to transfer this action to the District of
17 Utah is GRANTED.
18      IT IS SO ORDERED.
19      DATED:  April 22, 2008.

                                    LAWRENCE K. KARLTON
                                    SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT

16